UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DANTE EVANS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

CART.COM HOLDINGS 2, LLC, d/b/a SHOP HOUZZ

Defendant.

---

Docket No

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff, **DANTE EVANS** ("Plaintiff" or "Mr. Evans"), on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel, JOSEPH & NORINSBERG, LLC, as and for their class action complaint upon Defendant, CART.COM HOLDINGS 2, LLC d/b/a Shop Houzz ("Defendant"), hereby alleges as follows:

## INTRODUCTION

1. Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content while using his computer. Ex. A – DANTE EVANS, Legally Blind Diagnosis, dated 7/12/2024. Plaintiff uses the terms "blind" or "visually-impaired," as his central visual acuity with correction is less than or equal to 20/200. Some sight-impaired individuals who meet this definition have limited vision, while others have zero vision.

2. Defendant, **Cart.com Holdings 2, LLC d/b/a Shop Houzz** ("Defendant"), is the current operator of the consumer-facing retail platform located at **www.shophouzz.com** (the

"Website" or "Defendant's Website"). As of **August 5, 2025**, Cart.com assumed operational control of the Houzz retail marketplace, continuing to sell the same categories of home furnishings, décor, fixtures, and renovation-related products previously offered through Houzz's "Houzz Shop." Although Houzz Inc. continues to operate its design-oriented platform at Houzz.com, the retail storefront, product catalog, and e-commerce functions were transferred to and are now operated exclusively by Cart.com under the "Shop Houzz" brand. Defendant maintains physical offices and operational facilities throughout the United States, supporting its core business functions, including product fulfillment, customer service, logistics, and digital commerce operations. Defendant's Website functions as a highly interactive online marketplace offering thousands of home-improvement products, curated collections, and purchasing tools to consumers nationwide.

3. Plaintiff, Dante Evans, visited www.shophouzz.com because it offers a centralized platform for home remodeling and design, including curated products, professional-grade furnishings, and interactive planning tools. Although Plaintiff rents a condominium in Bronx County, his roommate has committed to funding a full interior remodel, and the unit's owners have agreed to contribute half the renovation costs. Plaintiff is actively involved in planning the redesign and sought to use Defendant's Website to browse products, compare options, and visualize design choices. He attempted to engage with features such as product detail pages, category navigation, interactive image galleries, and purchasing tools. However, due to persistent accessibility barriers—including unlabeled buttons, missing alternative text, inaccessible form fields, empty links, keyboard traps, and broken ARIA relationships—Plaintiff was unable to independently complete purchases or navigate the Website. These barriers were confirmed

through independent audits using SortSite and WAVE, which revealed hundreds of WCAG 2.1 Level A and AA violations across more than 1,200 pages. Plaintiff remains eager to return once the Website is remediated, as its integrated offerings are uniquely suited to his renovation goals and collaborative funding arrangement.

4. Plaintiff brings this civil action against Defendant for its failure to design, construct, maintain, and operate the Website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to www.shophouzz.com, and therefore its denial of the goods and services offered thereby—including those essential to Plaintiff's active condominium renovation project—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5. Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired,[1] including 2.0 million who are blind. According to a 2016 report published by the National Federation of the Blind, approximately 418,500 visually impaired persons live in the State of New York.[2]

6. Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, both New York State and New York City law require places

[1] *See* United States Census Bureau Report.

[2] *See* 2016 National Federation for the Blind Report.

of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

7. Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant violates the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

9. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claims under the New York State Human Rights Law, Article 15 (Executive Law § 290 *et seq*.)("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq*., ("NYCHRL") & § 296 *et seq*.; and the New York State Civil Rights Law, Article 4, § 40-c and § 40-d ("NYCRL").

10. Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because Defendant conducts and continues to conduct a substantial amount of business in this District through its highly interactive commercial Website, www.shophouzz.com, which is accessible to and used by consumers in New York. A substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to access the Website on multiple occasions from his home in Bronx County, New York, which is located within the Southern District of New

York.

11. Defendant, **Cart.com Holdings 2, LLC d/b/a Shop Houzz**, is a Delaware limited liability company with its principal place of business located in the United States, and is subject to personal jurisdiction in this District because it purposefully targets, solicits, and conducts business with New York residents through its commercial Website, www.shophouzz.com, which offers nationwide sales, shipping, and customer service. Defendant's Website is highly interactive, allows New York consumers to browse, select, and purchase goods, and is designed to serve customers in this District.

12. Defendant has been and is committing the acts and omissions alleged herein in the Southern District of New York, and in so doing, has violated the rights guaranteed to Plaintiff and other blind and visually-impaired consumers under the ADA. A substantial part of the acts and omissions giving rise to Plaintiff's claims—including his repeated attempts to access the Website and the resulting denial of equal access—occurred in this District.

13. Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website while located in Bronx County. The access barriers Plaintiff encountered have repeatedly denied him full and equal access and continue to deter him from returning to the Website. Courts routinely find venue proper in the district where the plaintiff attempted to access an inaccessible website and experienced the discriminatory barriers at issue.

14. The United States Department of Justice Civil Rights Division has recently stated that, "[t]he Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those

[ed class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and the NYCHRL. Plaintiff is unable to utilize a computer or device without the assistance of screen-reading software, such as Nonvisual Desktop Access or "NVDA."

## NATURE OF ACTION

15. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

16. In today's tech-savvy world, blind and visually impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites and the information, products, goods, and services contained thereon.

17. Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase, and other programs are available without the user having to purchase the program separately, such as the popular screen-reading software program for a Windows computer, Nonvisual Desktop Access "NVDA."

18. For screen-reading software to function, the information on a website must be

capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

19. Screen readers have rules and expectations about what the gathered information is and should be and use sophisticated rules to interpret what it has "seen," i.e., gathered with help from the operating system, the app in question, and other ways. Based on information gathered and subsequently interpreted, screen readers use components such as text-to-speech (TTS), braille, and other output mechanisms to present screen content.

20. The international website standards organization, the World Wide Web Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

21. Non-compliant websites pose common access barriers to blind and visually impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a. A text equivalent for every non-text element is not provided;

b. Title frames with text are not provided for identification and navigation;

c. Equivalent text is not provided when using scripts;

d. Forms with the same information and functionality as for sighted persons

are not provided;

e. Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f. Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g. If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h. Web pages do not have titles that describe the topic or purpose;

i. The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j. One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k. The default human language of each web page cannot be programmatically determined;

l. When a component receives focus, it may initiate a change in context;

m. Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n. Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o. In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p. Inaccessible Portable Document Format (PDF); and

q. The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

22. Websites have features and content that are modified on a daily, and in some instances, hourly basis, and a one-time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## STANDING

23. Plaintiff, DANTE EVANS, is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL. For Plaintiff to access the Internet, he must utilize a computer that contains a screen-reader, such as

"NVDA for Windows."

24. Screen reader "software translates the visual Internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user." *Andrews v. Blick Art Materials, LLC,* 286 F.Supp.3d 365, 375 (E.D.N.Y. 2017). As Judge Weinstein explained:

> "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be "clicked," which will bring her to another webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand.
>
> The screen reading software uses auditory—rather than visual—cues to relay this same information. When a sight-impaired individual reaches a link that may be "clicked on," the software reads the link to the user, and after reading the text of the link, says the word "clickable."…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with her keyboard." *Id.* at 373. *see also* American Federation for the Blind, Screen Readers, https://www.afb.org/blindness-and-low-vision/using-technology ("Computer Access for People Who Are Blind or Have Low Vision," & "Using Technology") (Last accessed on June 20, 2024; estimating 26.0 million adult Americans reported sight deficiency).

25. Plaintiff was injured when attempting to access Defendant's Website, www.shophouzz.com, initially on November 26, 2025, and again on November 27, 2025, from

his home in Bronx County. Plaintiff attempted to browse and purchase products essential to his ongoing condominium renovation project, including:

- Brightech LED floor lamps for his living room;
- Safavieh accent chairs for reading/computer nook;
- Moen bathroom fixtures for his ADA-compliant remodel;
- West Elm pendant lighting and CB2 coffee tables for a mid-century modern redesign.

26. Plaintiff also attempted to compare and contact interior designers and general contractors in the New York area using the Website's professional-services directory and project-estimate tools.

27. Plaintiff further attempted to use the Website's interactive features, including the "View in My Room" augmented-reality tool, to visualize furniture placement and lighting options, and to save design concepts using the Website's idea boards.

28. Despite repeated efforts, Plaintiff was unable to navigate key portions of the Website, including product categories, checkout forms, professional profiles, and interactive planning tools. These barriers prevented him from completing purchases and engaging with services independently.

29. Plaintiff intends to return to www.shophouzz.com within 30 days to complete purchases and hire a professional for the renovation. The denial of access to these specific products and services constitutes actionable harm under Title III of the ADA.

30. A technical audit of www.shophouzz.com conducted on December 25, 2025 revealed widespread accessibility barriers, including:

- Missing alt text on product images;
- Non-descriptive link text (e.g., "click here");
- Unlabeled form fields in checkout and login processes;
- Keyboard traps and inaccessible modal dialogs;
- Improper heading structure, impeding navigation by assistive technology.

31. These barriers violate WCAG 2.1 Level AA standards and constitute unlawful discrimination under Title III of the ADA, 42 U.S.C. § 121

32. The retail platform—operated by Cart.com under the "Shop Houzz" brand—continues to exhibit pervasive accessibility barriers.

33. Plaintiff's experience is not hypothetical or speculative. He has encountered specific, documented barriers and has a credible intent to return, satisfying the standing requirements articulated in *Calcano v. Swarovski North America Ltd.*, 36 F.4th 68 (2d Cir. 2022), and *Riley v. Baggu Corp.*, 2025 U.S. Dist. LEXIS 150080 (SDNY August 5, 2025).

34. Plaintiff's experience on www.shophouzz.com was not merely inconvenient—it was dehumanizing. Each attempt to browse Brightech LED floor lamps or Safavieh accent chairs ended in frustration as unlabeled buttons and inaccessible modals blocked his progress. He could not visualize West Elm pendant lighting using the Website's augmented-reality tool, nor could he save ADA-compliant bathroom layouts to his design boards. These barriers were not technical glitches—they were digital walls that excluded him from participating in the same design journey available to sighted users.

35. Plaintiff felt the sting of exclusion not only as a consumer but as a homeowner with a vision. He had identified specific contractors in the New York area and attempted to request

project estimates through Houzz's professional directory. Instead, he was met with inaccessible forms and broken navigation, forcing him to abandon the process. The denial of access to these services disrupted his renovation plans and reinforced a systemic message: that blind users are not welcome.

36. Plaintiff's intent to return is rooted in necessity, not speculation. His renovation project remains active, and the Website's marketplace and planning tools remain uniquely positioned to meet his needs. Until Defendant removes the barriers that block his access, Plaintiff remains excluded from a platform that promises inspiration and transformation but delivers only frustration and denial.

37. On December 25, 2025, Plaintiff's counsel conducted accessibility audits of www.shophouzz.com using PowerMapper's SortSite tool and the WAVE evaluation tool. These audits corroborated the barriers Plaintiff encountered and revealed hundreds of additional WCAG 2.1 violations across more than 1,200 pages. (See Exs. A–C, SortSite audit reports.)

38. Due to these persistent accessibility barriers—including unlabeled buttons, inaccessible modals, and missing alt text—Plaintiff was unable to:

- Navigate product categories or complete checkout
- Access professional profiles or submit contact forms
- Use interactive planning tools or save design ideas

39. Plaintiff has a concrete intent to return to www.shophouzz.com within 30 days to complete purchases and hire a professional for the renovation. The denial of access to these specific products and services constitutes actionable harm under Title III.

40. Because simple compliance with WCAG 2.1 would provide Plaintiff and other

visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to:

a. Constructing and maintaining a Website that is inaccessible to visually-impaired individuals, including Plaintiff;

b. Failing to construct and maintain a Website that is sufficiently intuitive to be equally accessible to visually-impaired individuals; and

c. Failing to take corrective action despite substantial harm to blind and visually-impaired consumers.

41. Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others, as alleged herein.

42. The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . . 42 U.S.C. § 12188(a)(2).

43. Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Websites. Plaintiff seeks that this permanent injunction requires

Defendant to cooperate with the Agreed Upon Consultant to:

a. Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b. Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c. Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant Website complies with the WCAG 2.1 guidelines; and;

d. Develop an accessibility policy that is disclosed on Defendant's Website, with contact information for users to report accessibility-related problems.

44. Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

45. Upon information and belief, Defendant has invested substantial sums in developing and maintaining the Website and has generated significant revenue from their online platforms. These amounts are far greater than the associated cost of making Defendant's Websites equally accessible to visually impaired customers. Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Websites.

## CLASS ACTION ALLEGATIONS

46. Plaintiff, DANTE EVANS, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind

individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

47. Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York and State of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered during the relevant statutory period.

48. Common questions of law and fact exist amongst the Class, including:

a. Whether Defendant's Website is a "public accommodation" under the ADA;

b. Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, and/or accommodations to people with visual disabilities, violating the ADA; and

d. Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL, NYCRL, and the NYHRL

49. Plaintiff's claims are typical of the Class. The Class, similar to the Plaintiff, are

severely visually impaired or otherwise blind, and claims that Defendant has violated the ADA, NYSHRL, NYCRL, and/or the NYHRL by failing to update or remove access barriers on the Website so that the website can be independently accessible to the Class.

50. Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel who is competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief concerning Plaintiff and the Class as a whole.

51. Alternatively, Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

52. Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

53. Moreover, judicial economy will be served by maintaining this lawsuit as a class action for numerosity purposes in that it is likely that the number of patrons who have attempted to utilize the services of Defendant's online platform exceeds 50 or more sight-impaired individuals.

## FIRST CAUSE OF ACTION

**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

54. Plaintiff, DANTE EVANS, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

56. Defendant's Website, www.shophouzz.com, is a service offered to the general public and constitutes a place of public accommodation under Title III of the ADA. As such, Defendant must ensure that the Website is fully and equally accessible to all potential consumers, including blind and visually-impaired individuals.

57. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

58. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally

> alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

59. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

60. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

## SECOND CAUSE OF ACTION

**(Violations of the New York City Human Rights Law)**

**(“NYCHRL”)**

61. Plaintiff, DANTE EVANS, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

62. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

63. Defendant is subject to NYCHRL because it owns and operates the Website www.shophouzz.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

64. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

65. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-

107(15)(a).

66. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

67. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

68. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

69. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

70. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as

punitive damages pursuant to § 8-502.

71. Plaintiff is also entitled to reasonable attorneys' fees and costs.

72. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**THIRD CAUSE OF ACTION**

**(New York State Human Rights Law)**

**("NYSHRL")**

73. Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74. At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

75. Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

76. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.shophouzz.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

77. Plaintiff has visited the Website on a number of occasions and has encountered

barriers to his access that exist.

78. Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

79. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

80. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

81. The Defendant's discriminatory practice also includes, "a refusal to take such steps

as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

82. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

83. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

84. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

85. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

## <u>FOURTH CAUSE OF ACTION</u>

**(Violation of New York State Civil Rights)**

**("NYCRL")**

86. Plaintiff, DANTE EVANS, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

87. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

88. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

89. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

90. § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

91. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website is a place of public accommodation that does not provide full and equal

accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

92. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

93. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

94. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

95. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief)**

96. Plaintiff, DANTE EVANS, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

97. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities

of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

98. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a. A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b. A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c. A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d. An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and

Plaintiff's attorneys as Class Counsel;

e. Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f. Pre-judgment and post-judgment interest;

g. An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h. Such other and further relief as this Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
December 30, 2025

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**

**/s/ Robert L. Schonfeld**
Robert Schonfeld, Esq.
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889